[798 NYS2d 430]

In the Matter of David J. Rodkin, an Attorney, Respondent. Departmental Disciplinary Committee for the First Judicial Department, Petitioner.

First Department, July 21, 2005

**APPEARANCES OF COUNSEL**

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee,* New York City (*Sherry K. Cohen* of counsel), for petitioner.

*Richard M. Maltz, PLLC,* for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent David J. Rodkin was admitted to the practice of law by the First Judicial Department on March 26, 1984, and at all times relevant to this proceeding, respondent maintained an office for the practice of law within this Department.

In October 2003, respondent, who practices exclusively in the area of immigration law, with a concentration in Chinese political asylum cases, was served with a notice and statement of charges which, as amended, alleged 31 charges of professional misconduct in connection with his handling of numerous immigration matters.* Specifically, respondent was charged with violating Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [conduct adversely reflecting on fitness to practice law]), DR 3-101 (a) (22 NYCRR 1200.16 [aiding the unauthorized practice of law]), DR 3-102 (a) (22 NYCRR 1200.17 [sharing a legal fee with a nonlawyer]), DR 5-107 (a) (22 NYCRR 1200.26 [engaging in a conflict of interest]), DR 6-101 (a) (2) (22 NYCRR 1200.30 [handling a legal matter without adequate preparation under the circumstances]) and (3) (neglect). After a hearing, the Referee sustained 13 charges, including neglect, aiding the unauthorized practice of law and conflict of interest. He did not sustain charges alleging improper fee-sharing or inadequate preparation of clients for hearings. The Referee recommended a six-month suspension. The Hearing Panel confirmed the Referee's findings of facts and conclusions of law as to the charges and recommended sanction, except it recommended against sustaining one of the neglect charges. The Departmental Disciplinary Committee now seeks an order confirming the Hearing Panel's determination and suspending respondent from the practice of law. The evidence showed that respondent participated in and thereby helped to perpetuate an established system where "travel agencies" advertising themselves as providers of legal services but staffed by nonlawyers served as the primary advisors to illegal Chinese aliens seeking political asylum. As the Hearing Panel concluded, "[T]he agencies hired [r]espondent merely to 'front' for them in Immigration Court, while they maintained the primary financial and substantive relationship with the clients, and continued to make decisions, draft filings and render advice that could, and sometimes did,

---

* Charges relating to two of the six clients to whom the charges related were withdrawn because the clients did not testify.

affect the outcome of a case. . . . [B]y facilitating the provision of legal advice by agencies that are not constrained by the ethical rules that govern the legal profession, and by making no efforts to discredit, attempt to cure or even discover the agencies' errors, [r]espondent became part of the very problem DR 3-101 (A) was designed to address."

In addition, it was determined that respondent engaged in a conflict of interest by accepting payment of his fees from the referring agencies. With respect to the neglect charges, as the Hearing Panel noted, by "accepting arrangements in which Respondent or his surrogates merely appeared at [c]ourt hearings in matters otherwise directed by non-lawyer agencies, [r]espondent fostered a system in which adequate preparation and/or lack of competent representation were almost inevitable."

While neither the Referee nor the Hearing Panel addressed Charge 31 which alleged conduct adversely reflecting on respondent's fitness to practice law (DR 1-102 [a] [7]), it is clear that respondent's misconduct violated this disciplinary rule. Accordingly, we sustain the charge.

It is noted that in January 2000, respondent received a letter of admonition charging him with the same misconduct found here. While he changed his practice in certain respects to comply with the letter of admonition, it was not until March 2002, after this Court disbarred an attorney for, inter alia, accepting referrals from immigration agencies (see Matter of Muto, 291 AD2d 188 [2002]), that respondent stopped accepting new cases from agencies. And, as late as April 2003, he continued to act as counsel of record in cases in which agencies were improperly involved.

Under the circumstances, including the nature of respondent's misconduct and his continued use of agencies after receiving the letter of admonition, balanced against his remorse and his extensive pro bono service, we agree with the Referee and the Hearing Panel that a six-month suspension is the appropriate sanction.

Accordingly, the petition of the Departmental Disciplinary Committee should be granted, the Hearing Panel's findings of fact and conclusions of law confirmed, as modified, and respondent suspended from the practice of law for a period of six months.

Tom, J.P., Andrias, Friedman, Sullivan and Nardelli, JJ., concur.

Respondent suspended from the practice of law in the State of New York, for a period of six months, effective August 22, 2005 and until further order of this Court.