[848 NYS2d 76]

In the Matter of ALBERT S. LEFKOWITZ (Admitted as ALBERT SOLON LEFKOWITZ), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, December 20, 2007

### APPEARANCES OF COUNSEL

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee,* New York City (*Jun Hwa Lee* of counsel), for petitioner.

*Richard M. Maltz* for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent Albert S. Lefkowitz was admitted to the practice of law by the Second Judicial Department on April 21, 1971. At all times relevant to this proceeding, he has maintained an office for the practice of law within the First Judicial Department.

In July 2005, the Departmental Disciplinary Committee served respondent with a notice and statement of charges alleging 12 counts of professional misconduct arising out of his immigration law practice. Respondent is alleged to have aided the unauthorized practice of law in violation of code of Professional Responsibility DR 3-101 (a), engaged in conflicts of interest in violation of DR 5-107 (a) (1), had clients execute nonrefundable retainer agreements in violation of DR 1-102 (a) (7) and engaged in conduct that adversely reflected on his fitness to practice law in violation of DR 1-102 (a) (7) (22 NYCRR 1200.16, 1200.26, 1200.3). Respondent answered the charges, admitting many of the facts alleged by the Committee, but denied that his conduct violated any disciplinary rules.

A hearing was held before a Referee concerning both liability and sanction. The Committee introduced the testimony of an immigration law expert and four former clients, and respondent was the only witness testifying on the issue of sanction. The hearing evidence established that petitioner began an immigration law practice in 1995, after 14 years of working as general counsel to a corporate graphics art enterprise. The new practice primarily involved Chinese and Indonesian asylum cases. From 1995 through 2001, respondent was employed by Global Interchange, an immigration services company owned by non-lawyers and staffed by nonlawyer agents. Respondent was paid a weekly salary of $1,000 and received health insurance for working on Global's immigration cases, but he also had his own private clients. From approximately 2000 to 2004, respondent received most of his asylum cases through referrals from Jonathan Tsao, an immigration agent not associated with Global.

The charges relating to aiding the unauthorized practice of law arose out of the nature of his relationship with five immigration clients. In each of the cases, the clients initially used the services of Tsao or Global, who would prepare and file asylum applications and maintain their case files. When an attorney was needed to represent clients at interviews or attend hearings in immigration court, respondent would then be retained. Notably, respondent would be paid directly by the agent, not the clients, and the Referee concluded that these nonattorney agents, not respondent, "maintained the primary financial and substantial relationship with th[e] clients." In addition, respondent admitted that he did not have primary responsibility for the case files and that the work done by the agents in drafting asylum applications involved some legal analysis.

With respect to the conflict of interest charges, the Referee found that respondent's relationship with Tsao created "divided loyalties," since although he had an attorney-client relationship with each of the five clients, he was also dependent on Tsao for case referrals and legal fees. Respondent never informed his clients of this conflict. Respondent also admitted in a prehearing stipulation that he had improperly entered into nonrefundable retainer agreements with three clients. Finally, the Referee concluded that based upon the totality of respondent's misconduct, he had engaged in conduct that adversely reflected on his fitness to practice law.

On the issue of sanction, respondent testified on his own behalf. He stated that he was 63 years old, had suffered two heart attacks and had been downsized out of his general counsel position after 14 years. He was unemployed for two years until he started working for Global. Respondent denied that he ever paid the agents for referrals, and reported that he is currently associated with a criminal defense law firm. In this new arrangement, he had ample support staff, a large client base requiring immigration services, he only dealt with licensed immigration agents and had clients sign proper retainer agreements.

At the conclusion of the hearing, the Committee suggested a six-month suspension and respondent urged a private censure. In his findings of fact and conclusions of law, the Referee sustained all 12 charges against respondent and recommended a private reprimand. The Referee noted that the complainants who testified against him bore him no ill-will, respondent had reformed his practice and he did not act with venality.

A Hearing Panel was convened and concurred with the Referee's recommendations in all respects. Focusing on the sanction issue, the Hearing Panel concurred with the Referee that respondent's misconduct was less serious than that of the attorney in *Matter of Rodkin* (21 AD3d 111 [2005]), another immigration case, and that this respondent had taken immediate remedial measures to reform his practice, while the respondent in *Rodkin* had previously been admonished for such conduct, prior to receiving a six-month suspension.

The Committee now seeks an order pursuant to 22 NYCRR 605.15 (e) disaffirming in part the sanction recommendation of the Hearing Panel, confirming the findings of fact and conclusions of law of the Referee, and imposing a six-month suspension, but no less than a public censure. By cross motion, respondent seeks an order confirming the reports of the Referee and Hearing Panel, remanding the matter for the issuance of a private reprimand and denying the Committee's motion to disaffirm.

Initially, we confirm that portion of the Hearing Panel's determination that upholds the liability findings against respondent. The Committee's motion challenges only the recommended sanction, and that remains the only disputed issue before this Court. The Committee contends that this Court's prior decision in *Matter of Rodkin* (*supra*) mandates a suspension in this case since respondent's conduct is very similar to that of the *Rodkin* respondent. In *Rodkin*, the respondent was charged with aiding in the unauthorized practice of law and engaging in conflicts of interest by acting as a "front" for immigration agencies staffed by nonlawyers. As here, the agents maintained the primary relationship with the clients while the attorney-respondent would handle court matters. Also similar to this case, the respondent in *Rodkin* was also found to be conflicted by virtue of his accepting legal fees from the agency, not the client.

While there are strong similarities between the facts of *Rodkin* and this matter, there are also two significant differences. The respondent in *Rodkin* was also found guilty of neglect of a legal matter, and, more importantly, he had received a prior letter of admonition at least three years earlier charging him with the same type of misconduct for which he was ultimately suspended. Indeed, the decision in *Rodkin* noted that the respondent "continued to act as counsel of record in cases in which agencies were improperly involved" more than three years after having received the admonition (*id.* at 113).

Respondent argues that he should receive private discipline because he had a prior unblemished record and made prompt remedial efforts to reconfigure his law practice. While this is true, respondent ignores the fact that he openly participated in a business that blatantly engaged in the unauthorized practice of law and accepted improper fees from nonclients. While respondent suggests that he was unaware of the impropriety of such acts, we cannot accept this as an excuse. Notwithstanding the fact that the *Rodkin* case was not decided until July 2005, the prohibition against this type of conduct is clearly delineated in the disciplinary rules (*see* DR 3-101 [a]; DR 5-107 [a] [1]), and, in our view, respondent should have been aware of it. Nevertheless, the conduct in this case was less egregious than that in *Rodkin*, and we disaffirm the report to the extent that we impose a sanction of a three-month suspension (*see Matter of Parker*, 241 AD2d 208 [1998]).

Accordingly, the Committee's motion to disaffirm that portion of the Hearing Panel's report recommending a private reprimand should be granted, the report otherwise confirmed, and respondent suspended for a period of three months.

SULLIVAN, J.P., BUCKLEY, GONZALEZ, SWEENY and KAVANAGH, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of three months, effective January 22, 2008; cross motion denied.